FRISKE, Respondent, v. INTERSTATE COMMERCIAL MUTUAL INS. CO., Appellant.

(262 N. W. 204.)

(File No. 7669. Opinion filed August 5, 1935.)

614

*L. E. Waggoner,* of Sioux Falls and *H. E. Mundt,* of Mound City, for Appellant.

*Theo. J. P. Giedt,* of Eureka, and *J. M. Berry,* of Ipswich, for Respondent.

POLLEY, J. This action was brought to recover on a policy of fire insurance. The execution and delivery of the policy, and the destruction of the insured property by fire while the policy was in effect, are admitted by the defendant.

In its answer the defendant alleges as a defense: First, that the subject of the insurance was personal property, which, at the time of the execution of the policy was incumbered by a chattel mortgage; and, second, that plaintiff did not file a proof of loss as provided by the terms of the policy. These allegations are admitted by the plaintiff, but it is claimed that both of these provisions in the policy were waived by the defendant, and these questions of waiver are the only questions involved in the case.

The policy was issued on or about the 1st of October, 1931, and in regard to the chattel mortgages plaintiff testified that the insured property was situated in the town of Artas; that some two or three months prior to the issuance of the policy one V. H. Pomeroy visited plaintiff at Artas and solicited fire insurance for defendant company, on plaintiff's blacksmith tools and stock, and on his household goods; that said Pomeroy looked over the blacksmith shop and contents, and also his residence and contents; that he told Pomeroy that his property was encumbered by two chattel mortgages, and that he would not take any insurance until he had paid off these mortgages. That he told Pomeroy that he would take some insurance when he was ready, and that he would take

it from either Pomeroy or Fritz Forseth; that he had promised Forseth. About two months after this conversation (September 16, 1931) plaintiff wrote Forseth at Aberdeen that he would like to have his blacksmith shop and his household goods insured for about 75 per cent of their value. This was followed by two other letters of the same tenure written on the 21st and 24th of September. In neither of these letters was any reference made to chattel mortgages. Whether these letters were forwarded to the home office of defendant, or whether Forseth or Pomeroy made out and sent in an application for the insurance, the record does not show; but in either event about the 1st of October a policy was sent from the home office to Forseth or Pomeroy. The policy was not to go into effect until it was countersigned by the local agent and the premium paid. On or shortly after said date, Pomeroy took the policy to Artas, where he saw plaintiff. After some talk with plaintiff he made some changes in the policy, countersigned the same, collected the premium and delivered the policy to plaintiff. On this occasion and before Pomeroy signed or delivered the policy, plaintiff again called Pomeroy's attention to the existing chattel mortgages; and that Pomeroy knew of the existence of the said chattel mortgages prior to and at the time of the payment of the premium and delivery of the policy is not disputed by the defendant. But defendant claims that Pomeroy was only a soliciting agent in the employ of Forseth, that the company was not bound by his knowledge, and that no waiver of the mortgage clause in the policy could be based on Pomeroy's knowledge.

Upon the question of agency the president of the defendant company testified that defendant had three agents, one of whom was Pomeroy, in the state of South Dakota; that Pomeroy held a certificate of employment from the defendant company, and that he also held a license from the insurance department of this state; and that "he had authority to sign his name as agent on * * * the policy"; and Pomeroy's authority to countersign and deliver policies and collect the premiums thereon is not questioned by the defendant in this case.

Upon the question of the chattel mortgages, the court instructed the jury as follows:

"If at the time the said policy was issued the said Pomeroy was aware of the fact that said property was incumbered by said

mortgages and knew of the existence of the same, and said policy was issued and delivered at a time and while the said Pomeroy knew that said property was so mortgaged and incumbered, the issuance of such policy while such knowledge existed would be a waiver of the right to defeat liability because of the said mortgages. In such case, the existence of such mortgages would be no defense in this action.

"On the other hand, if the said Pomeroy did not at the time that said policy was issued know that said property was mortgaged, and such policy was issued without any knowledge on the part of Pomeroy that said property was so mortgaged, in such case the existence of the said mortgages would absolutely destroy the obligations of the defendant to pay the said loss and your verdict would be for the defendant."

The giving of the foregoing instructions was fully warranted by the evidence in the case, and the verdict of the jury settles the question of waiver of the chattel mortgages in favor of the plaintiff. See Harding v. Norwich Union Fire Ins. Soc., 10 S. D. 64, 71 N. W. 755.

■ Upon the question of the service of proof of loss the evidence shows that the fire occurred on the 7th day of September, 1932. Defendant was notified of the fire immediately and referred the matter to Main & Baker, an adjustment company of Sioux Falls, for adjustment. A representative of Main & Baker inspected the premises and pronounced plaintiff's loss "a total loss," and so reported to defendant within five days after the occurrence of the fire. Shortly thereafter plaintiff wrote defendant asking when settlement would be made. To this letter plaintiff received no reply. Shortly thereafter he wrote defendant again repeating the inquiry and to this letter he received no reply. On October 7, 1932, plaintiff caused a letter to be written for him to the defendant in which he asked why he could not get an adjustment on the loss and asked the defendant to let him know what it intended to do. The defendant answered this letter by merely saying that plaintiff's letter had been referred to Main & Baker, and on the 13th day of October plaintiff received a letter from Main & Baker, saying that the matter of plaintiff's loss was being investigated by the State Fire Marshal, and that nothing could be done until the investigation was completed. In none of these letters from Main & Baker, or the

defendant, was any mention made of proof of loss. On November 24, 1932, plaintiff again wrote to the defendant notifying defendant that the Fire Marshal had informed him that the investigation had been completed and that defendant was at liberty to make settlement. Again defendant wrote to plaintiff saying that his letter had been referred to Main & Baker. On December 12th plaintiff received a letter from Main & Baker objecting to the making of any settlement and calling plaintiff's attention to the chattel mortgage clause in the policy.

No objection to making settlement because of plaintiff's failure to serve proof of loss was made until the 12th day of December, 1932, some time after the time allowed for making proof of loss had expired. It is plaintiff's contention that by defendant's failure to make settlement because no proof of loss had been served within the sixty days allowed for that purpose the defendant had waived the service of such proof. Section 1447, Rev. Code 1919, reads as follows: "Delay in the presentation to an insurer of notice or proof of loss is waived, if caused by any act of his, or if he omits to make objection promptly and specifically upon that ground." Under the evidence defendant led the plaintiff to believe that proof of loss would not be required, and such proof of loss was clearly waived under the above-quoted statute. State v. Aetna Ins. Co., 58 S. D. 548, 237 N. W. 771; Alderman v. N. Y. Underwriters' Ins. Co., 61 S. D. 284 N. W. 261.

■ Appellant predicates error upon plaintiff's failure to comply with what is known as the "Inventory Iron-Safe" clause. The policy contains this clause, but this question is not properly before the court. This clause is not alleged as a defense in appellant's answer. The matter was called to the attention of the court during the trial, and the defendant requested and was given permission by the court to amend its answer so as to raise this question; but no such amendment was made. The matter was not submitted to the jury upon any instruction or requested instruction, nor any notice whatever taken of the matter. Moreover, it appears affirmatively in the courts instructions that only the two issues, that presented by the chattel mortgage clause and the clause requiring the service of proof of loss, were submitted to the jury.

■ It will be noted that the "Inventory Iron-Safe" clause contained in the policy, requires the taking of an inventory and the

keeping of a set of books and these are to be kept "locked in a fireproof safe at night and at all times when the store mentioned in the within policy is not actually open for business." This involves a question of fact, i. e., did the fire take place in the night-time, or when the store was "not actually open for business"? The evidence shows that the fire occurred quite early in the morning, but it also shows without dispute that the store was open for business and that at least one customer had made a purchase in the store that morning before the occurrence of the fire. The defendant had the burden of showing either that the fire took place in the night, or that the place was "not actually open for business at the time of the fire." The defendant failed to maintain this issue by any proof, and the jury would have been warranted in finding for the plaintiff on this issue had it been submitted to them.

The judgment and order appealed from are affirmed.

WARREN, P. J., and ROBERTS and RUDOLPH, JJ., concur.

CAMPBELL, J., concurs in result.